UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES HEISE, *et al.*,

        Plaintiffs,

v.   Case No. 8:07-CV-1866-T-24MAP

PETER JAMES PORCELLI, and
CHRISTOPHER TOMASULO, et al.,

        Defendants.
_____/

## ORDER

Plaintiffs, nine Florida homeowners allegedly defrauded by thirteen Defendants, filed this action for civil RICO violations, violations of the federal Truth in Lending Act, the Florida Unlawful Mortgage Brokering and Mortgage Lending Act, the Florida usury statute, and civil conspiracy.[1] Plaintiffs allege the Defendants clouded the titles on Plaintiffs' real estate properties pledged as collateral by Plaintiffs for unlawful, usurious loans made by Defendants. On March 21, 2008, the Court entered an Order directing Plaintiffs to replead their complaint due to failure to demarcate their causes of action, failure to plead with sufficient detail for purposes of Rule 9(b), and failure to link the elements of their claims to the introductory fact section. *See* doc. 28. At this juncture, Plaintiffs have filed an Amended Complaint, and four of the thirteen remaining Defendants, Christopher Tomasulo, Thomas Clayton Little, Attila M. Toth, and Southeast Advertising, Inc. seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b) because

---

[1] Originally there were eleven Plaintiffs, but Plaintiffs Istvan and Ilona Zsigmond voluntarily dismissed their claims against the Defendants on May 23, 2008 (doc. 45). The original complaint named nineteen defendants and twenty John Doe defendants.

the Plaintiffs still fail to state claims upon which relief can be granted and fail to satisfy the heightened pleading standard required for fraud claims (*see* docs. 38, 39, 42, and 43). After consideration, I conclude the motions to dismiss should be denied without prejudice and Plaintiffs should be given one last chance to file an amended complaint that meets Rule 9's demands.[2]

    *A.    Standard of review*

        *1. Rule 12(b)(6)*

The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which he bases his claim. Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964 (2007) citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed.R.Civ.P. 8(a)(2). Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65. "Factual allegations must be enough to raise [the claimant's] right to relief above the speculative label on the assumption that all of the complaint's allegations are true." *Id.* at 1965 (citations omitted).

        *2. Rule 9(b)*

Claims of fraud present an exception to the "notice" pleading protocol envisioned by Rule

---

[2] United States District Judge Susan C. Bucklew referred these motions to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). *See* docs. 40, 44. But after consulting with her, this resolution of the motions by order is appropriate because it does not result in a disposition of the action on the merits.

8. Five of the Plaintiffs' six counts sound in fraud. Consequently, the Plaintiffs must meet Rule 9(b)'s heightened pleading standard: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, Plaintiffs must allege facts as to the time, place, and substance of the Defendants' alleged fraud, the details of the Defendants' allegedly fraudulent acts, when they occurred and who engaged in them. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). For their civil RICO claim, the Eleventh Circuit's pleading requirements per Rule 9(b) are more specific: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. *Ambrosia Coal & Construction Co. v. Pages Morales,* 482 F.3d 1309, 1316-17 (11th Cir. 2007) (affirming dismissal of complaint for failure to meet Rule 9(b) requirements). Additionally, Plaintiffs must link their specific allegations to the causes of action pled in their complaint. *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1278-79 (11th Cir. 2006). Finally, Rule 9(b) requires the Plaintiffs to inform each Defendant about the nature of his alleged participation in the fraud. *Id.*

    B.    *Discussion*

        *1. Count I- Civil RICO*

Pursuant to 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In order to establish a federal civil

RICO violation under § 1962(c), a plaintiff must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282-83 (11th Cir. 2006). Furthermore, in civil cases, RICO plaintiffs must also satisfy the mandates of 18 U.S.C. § 1964(c). Under this provision, a person injured in his business or property as a result of RICO activities has a right to recover threefold the damages sustained. Hence, civil RICO claimants must prove (1) requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c).

*a. enterprise*

Looking at the first two elements of a § 1962(c), Plaintiffs must establish "conduct of an enterprise" and the enterprise must have a common goal. *Williams,* 465 F.3d at 1283-84 *quoting U.S. v. Turkette*, 452 U.S. 576 (1981). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individual associated in fact." 18 U.S.C. § 1961(4). The "definitive factor" of a RICO enterprise is "the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *Williams, supra,* at 1284. "The existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id* (citation omitted). In this case, Plaintiffs allege that Defendants Toth, Tomasulo, and Little (the individual Defendants who have moved for dismissal of the amended complaint) were "associated with or employed by the RICO Enterprise," Safe Harbour Foundation of Florida, Inc. Plaintiffs further allege that Toth, Tomasulo, and Little "participated directly or indirectly in the conduct of the RICO Enterprise's affairs through a pattern of racketeering activity

4

in violation of 18 U.S.C. § 1962(c)" (Amended Complaint ¶¶ 51-53). The Plaintiffs, however, do not provide any specific facts to support these legal conclusions about *how* these Defendants were employed or associated, or *how* they participated in RICO enterprise's racketeering activities. Plaintiffs' formulaic recitation of the RICO elements is hardly enough to notify Defendants of their alleged fraudulent acts in furtherance of the enterprise. *See Twombly*, 127 S.Ct. at 1964-65.

Specifically, the amended complaint alleges that Tomasulo, Little, and Toth actively concealed their intent to obtain Plaintiffs' homes or the equity in the homes and failed to disclose to Plaintiffs that a federal court had enjoined Porcelli, Harris, and Tomasulo from engaging in commercial credit transactions (Amended Complaint ¶¶ 55-56), and that Tomasulo directed distribution of fraudulent Safe Harbour "foreclosure rescue" flyers from December 2004 through June 2007 and directed Toth to obtain Plaintiffs' signatures on loan documents (Amended Complaint ¶ 57). These allegations, however, are vague and conclusory, and fail to apprise the Defendants about their specific activities directed at Plaintiffs. Although Plaintiffs allege Toth made misrepresentations to Plaintiffs concerning the loan documents, including the amounts and interest rates of the loans, the effect of the option documents, and the necessity of signing the loan documents to obtain loans to save Plaintiffs' homes (Amended Complaint ¶ 58), they neglect to identify even a single loan transaction or the Plaintiff(s) to whom the alleged misrepresentations were made. Plaintiffs allege that Tomasulo, Toth, Little, and Southeast Advertising collected unlawful debt through the Safe Harbour Foundation of Florida, Inc. by making loans to Plaintiffs with interest rates in excess of Florida's criminal usury threshold in violation of 18 U.S.C. § 1962(c) (Amended Complaint ¶¶ 63-64), but fail to specify the rate of interest, the Plaintiff(s) to whom the loans were made, or from whom they collected the so-called unlawful debt. Plaintiffs allege that

Tomasulo, Little and Toth participated in collecting unlawful debt by inducing Plaintiffs to sign over security interests in Plaintiffs' homes as collateral for the illegal debt (Amended Complaint ¶ 65), but do not identify the particular transactions or the Plaintiff(s) induced to sign over the alleged security interests. Similarly, Plaintiffs allege that Tomasulo received payments from Plaintiffs towards these illegal debts (Amended Complaint ¶ 66), but do not support their allegations with necessary facts regarding which Plaintiffs Tomasulo received payments from or how the debts were "illegal." Plaintiffs further allege that Tomasulo and Little communicated payment demands to Plaintiffs if payments fell behind schedule (Amended Complaint ¶ 67), that Tomasulo and Little instituted and directed legal action against Plaintiffs to enforce the default options against Plaintiffs if they defaulted on the illegal debt (Amended Complaint ¶ 68), and that Southeast Advertising received assignments of the usurious loans, knowing they were illegal, received assignments of Plaintiffs' homes to itself, and instituted and directed legal action against the Plaintiffs to coerce payment of the illegal debt (Amended Complaint ¶¶ 69-71). Again, these allegations are wholly unsupported with the who, what, where, when or why, or any specific allegations sufficient to notify the Defendants of the alleged unlawful transactions.

The second element of an enterprise is that the enterprise has a common purpose. Here, Plaintiffs vaguely allege that Defendants had a common purpose of concealing their intent to obtain Plaintiffs' homes or at least the equity therein (Amended Complaint ¶ 55). Although the alleged common purpose may be sufficient, Plaintiffs pleadings fall short of the requisite details under rule 9(b). *See Williams,* 465 F.3d at 1284 (recognizing the common purpose of gaining sufficient financial benefits from the scheme to defraud).

Finally, the Plaintiffs must allege that Defendants participated in the operation or management

6

of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). Although Plaintiffs need not establish that a defendant is primarily responsible for the enterprise's affairs, the Plaintiffs must allege facts showing that each Defendant had "some part in directing the affairs of the enterprise." *Williams,* 465 F.3d at 1285. Section 1692(c) makes it unlawful for any person "... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "The word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Reves,* 507 U.S. at 179. In order to survive a 12(b)(6) motion, a plaintiff must offer specific factual assertions as to how the defendants participated in the operation or management of the RICO enterprise. *In re Managed Car Litigation*, 298 F.Supp. 2d 1259, 1276-77 (S.D. Fla. 2003). While this circuit has never required anything other than a "loose or informal" association of distinct entities, I find that, even under this standard, Plaintiffs still fail to allege sufficient facts. *Williams*, 465 F.3d at 1284. Plaintiffs assert only that the Defendants' acts constitute a pattern of racketeering activity and that the Defendants "participated directly or indirectly in the conduct of the RICO enterprise's affairs through the collection of unlawful debt" (Amended Complaint ¶¶ 62-72), but do not provide specific facts in support or assert Defendants had "some part in directing the affairs of the enterprise." *See Reves, supra.* Hence, I find that Plaintiffs failed to sufficiently allege that Defendants engaged in the operation or management of the enterprise, and that their conclusory and speculative RICO count fails to state a claim upon which relief may be granted in this regard. *See Twombly, supra*.

### *b. racketeering activity*

To prove the third and fourth elements of a §1962(c)-based RICO claim, a "pattern of racketeering activity," Plaintiffs must allege: 1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). To successfully plead such a claim, Plaintiffs are required to allege: (1) that the defendant intentionally participated (2) in a scheme to defraud, (3) the plaintiff of money or property, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages. *Sikes v, Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002). Of course, a RICO claim predicated on fraud compels compliance with Rule 9's specificity requirements as well.

Plaintiffs allege that Defendants Porcelli, Harris, Tomasulo, Little, and Toth's operation of Safe Harbour Foundation of Florida, Inc. constituted a scheme to defraud Plaintiffs utilizing the U.S. Mail and interstate wire communications in violation of § 1962(c) (Amended Complaint, §§53-54). Plaintiffs further allege Defendants distributed fraudulent Safe Harbour "foreclosure rescue" flyers through the U.S. Mail and interstate wire communications from approximately December 2004 through approximately June 2007 (Amended Complaint §57). Plaintiffs' allegations fail to charge that Defendants Tomasulo, Little, Toth, and Southeast Advertising, Inc. committed two or more predicate acts within a ten-year time span, the predicate acts were related to one another, and the predicate acts demonstrate criminal conduct of a continuing nature. *Jackson*, 372 F.3d at 1265.

Hence, even assuming at this juncture the truth of the alleged fraudulent acts, I find that Plaintiffs have failed to sufficiently allege a pattern of racketeering activities.

Alternatively, I find Plaintiffs' allegations that Defendants each "participated in the collection of unlawful debt," a basis for liability under 18 U.S.C. § 1962(c), likewise insufficient (¶¶63-71). The allegations do nothing more than recite the statutory clause and fail to alert the Defendants about their alleged wrongdoing(s). Plaintiffs do not refer to particular loan transactions or collection efforts in their allegations, and cannot meet the requisite pleading standards without doing so.

### c. injury to business or property caused by RICO violation

To assert a civil RICO cause of action, Plaintiffs must also prove (1) requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c). Plaintiffs allege that "[u]pon information and belief, the Defendants' fraudulent scheme has injured not only each of the Plaintiffs, but hundreds of other victims during its operation" and that "[h]ad the defendants truthfully represented their intent to take the Plaintiffs' homes, as opposed to "saving them," and truthfully disclosed that they had been enjoined from making such loans, Plaintiffs would not have obtained loans through the RICO Enterprise." (Amended Complaint ¶¶ 60- 61). Plaintiffs further allege that "as a result of these violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs have suffered extreme economic damage, and are entitled to recover the same" (Amended Complaint ¶ 74). Defendants claim these allegations are insufficient because they fail to specify acts that proximately resulted in damage to them.   I agree.  *See Williams,* 465 F.3d at 1286 quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985).

### 2. Count II- Truth in Lending/ Home Ownership and Equity Protection Act

Plaintiffs' truth in lending claim identifies Defendants "Silverstone Lending LLC, Silverstone

9

Financial LLC, Porcelli, Harris, and Tomasulo are 'Creditors' within the meaning of 15 U.S.C. § 1601(f) because they originated more than two 'high cost' mortgages within a twelve month period at the time of the events described in this complaint" (¶ 79). Similar to Count I, however, the claim lacks the specificity required by Rule 9(b), as the Plaintiffs fail to set forth specific allegations supporting the elements of their truth in lending act claim. Although Plaintiffs assert the Defendants originated "high cost" loans, they fail to allege facts supporting this conclusion (¶ 78). The claim fails to set forth any specific factual allegations as to Tomasulo making or collecting on specific loan(s), his failure to disclose certain loan terms, or his disclosure of false or misleading information, and is inadequate.

### 3. Counts III and IV- state law claims

The same pattern of conclusory allegations follows in Plaintiffs' state claims for unlawful mortgage brokering and lending (Count III) and usury (Count IV).[3] The deficiencies identified in the original complaint remain unchanged. These counts fail to distinguish among Defendants, specify their respective roles in the alleged fraud, or identify with particularity the suspect mortgage loan(s) and usurious transaction(s). Because the claims offer no more than a formulaic recitation of the elements, it cannot stand.

### 4. Count V- declaratory judgment

Aside from Plaintiffs' fraud accusations, they also seek a declaratory judgment restoring their ownership in their real property and clearing the claims and encumbrances caused by Defendants' illegal acts. This count fails for reasons other than Rule 9(b). A party seeking a declaratory judgment

---

[3] Federal courts deciding supplemental state law claims are required to apply state substantive law but federal procedural law. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987). Hence, Rule 9(b) likewise applies to these counts.

must allege a "justiciable controversy." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270 (1941). While Plaintiffs' allegations in Count V indicate that Defendants' actions have clouded Plaintiffs' titles, they fail to state a claim because they do not describe a justiciable controversy between the parties. Although Plaintiffs added allegations identifying their properties in their amended complaint, the new allegations amount to no more than superfluous facts. Plaintiffs still fail to assert a justiciable controversy. Furthermore, Defendant Tomasulo (who is the only Defendant mentioned in count V moving to dismiss at this time) is identified as being associated with only two of the Plaintiffs, Istvan and Ilona Zsigmonds (¶¶113-114). Istvan and Ilona Zsigmonds voluntarily dismissed their claims against Defendants and this Court entered an Order dismissing their claims. *See* docs. 45 and 47. For these reasons, I conclude this count fails to state a claim upon which relief may be granted.

     *5. Count VI- declaratory judgment*

Like the conspiracy claim contained in the original complaint, this claim suffers from a lack of particularity. Plaintiffs' conclusory allegations vaguely describe that the Defendants "conspired among themselves and with others to commit illegal acts and to use illegal methods to wrongfully obtain the Plaintiffs' property" (¶115). Plaintiffs' allegation that Tomasulo, Toth, and Little "participated with Porcelli in the day-to-day operations of the conspiracy in Florida, by assisting in the solicitation and execution of the illegal loans, and enforcing the illegal debts once the loans had been made" is insufficient to state a claim for civil conspiracy under the rule 9(b) standard (¶ 117). Likewise, Plaintiffs' assertion that Southeast Advertising "participated in the conspiracy by serving as a conduit to receive and distribute funds collected through the illegal loans; by accepting assignments of the illegal loans; and by assisting in the enforcement of the illegal loans (¶119), is

insufficient to raise Plaintiffs' right to relief above a speculative level even assuming these allegations are true. *Twombly, supra,* at 1965. *See American United Life Insurance Co. v. Martinez,* 480 F.3d 1043, 1067-68 (11th Cir. 2007) (finding civil conspiracy count failed to comply with Rule 9(b) because it failed to allege specifics about fraud, the agreement, the dates, and each conspirator's reasons to know of the fraud). Furthermore, an actionable conspiracy requires an underlying actionable tort or wrong, and I find Plaintiffs have failed to set forth an underlying actionable cause herein. Hence, Plaintiffs' conspiracy claim fails under Rules 12(b)(6) and 9(b).

   *D. Conclusion*

This is not the first time this Court has examined Plaintiffs' pleadings in this case. At first, Plaintiff's original complaint was drafted "shutgun" style with antecedent allegations incorporated by reference into each claim for relief and a lack of connectivity of facts to the causes of action. Although four of the Defendants moved the Court to dismiss the original complaint, I entered an Order on March 21, 2008, striking the complaint and directed Plaintiffs to replead the complaint pursuant to Fed.R.Civ.P. 12(e) and denied the Defendants' motions to dismiss the complaint without prejudice. *See* doc. 28. The Order cautioned Plaintiffs that if they filed a repleader with the same deficiencies their pleading could be stricken or their case dismissed. Plaintiffs' amended complaint, while more precise than the prior pleading, is still deficient. As set forth herein, Plaintiffs' claims against Defendants remain conclusory and speculative. However, because the Eleventh Circuit prefers the district court give a plaintiff an opportunity to amend a complaint rather than dismiss it when it appears that a more carefully drafted complaint might state claims upon which relief may be granted, Plaintiffs should be given one more opportunity to amend their allegations in an effort to set forth more particular averments against Defendants. *Friedlander v. Nims*, 755 F.2d

810 (11th Cir. 1985) (dismissal appropriate only after court gives plaintiff notice of complaint's deficiencies and an opportunity to amend).

Accordingly, it is hereby

ORDERED:

1. Defendants Tomasulo, Little, Toth, and Southeast Advertising, Inc's motions to dismiss Plaintiffs' complaint (docs. 38, 39, 42, and 43) are denied without prejudice.

2. Since a more adequately pleaded complaint may state claims, Plaintiffs are directed to file a second amended complaint within fourteen (14) days of this Order, if they can appropriately do so. If Plaintiffs fail to rectify the deficiencies set forth in this Order, the Court may dismiss the case and consider imposition of monetary sanctions.

3. No other Defendants may be added and no other claims may be added without obtaining permission of the Court. If a second amended complaint is not filed by the allotted time, the case will be dismissed with prejudice.

IT IS SO ORDERED at Tampa, Florida, on June 13, 2008.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Susan C. Bucklew
Counsel of Record