UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JAMES HEISE, *et al.*,

        Plaintiffs,

v.                                  Case No. 8:07-CV-1866-T-24MAP

PETER JAMES PORCELLI, and
CHRISTOPHER TOMASULO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    This cause is once again before the Court on motions to dismiss the complaint.  This time,

the Plaintiffs, nine Florida homeowners allegedly defrauded by Defendants, have voluntarily

withdrawn their allegations against three of the Defendants and ten Defendants remain.  The

second amended complaint includes the same causes of action as the previous complaints – claims

for civil RICO violations, violations of the federal Truth in Lending Act, the Florida Unlawful

Mortgage Brokering and Mortgage Lending Act, the Florida usury statute, and civil conspiracy.

Plaintiffs allege the Defendants clouded the titles on Plaintiffs' real estate properties pledged as

collateral by Plaintiffs for unlawful, usurious loans made by Defendants.  On March 21, 2008, the

Court entered an Order directing Plaintiffs to replead their complaint due to failure to demarcate

their causes of action, failure to plead with sufficient detail for purposes of Rule 9(b), and failure

to link the elements of their claims to the introductory fact section.  *See* doc. 28.  After Defendants'

moved to dismiss the amended complaint, this Court found the Plaintiffs still failed to state claims

upon which relief can be granted and failed to satisfy the heightened pleading standard required

for fraud claims (*see* docs. 38, 39, 42, and 43).  At this juncture, Defendants Thomas Clayton Little

("Little") and Southeast Advertising, Inc. ("Southeast") seek to dismiss counts I and VI, the only two counts implicating them, once again asserting a lack of specificity required by Rule 9(b).  After consideration, however, I conclude the motions to dismiss (docs. 50-51) should be denied, as the Plaintiffs' second amended complaint meets Rule 9's demands.[1]

> A.     *Standard of review*
>
> 1.  *Rule 12(b)(6)*

The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which he bases his claim.  Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964 (2007) citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed.R.Civ.P. 8(a)(2).  Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65.  "Factual allegations must be enough to raise [the claimant's] right to relief above the speculative label on the assumption that all of the complaint's allegations are true." *Id.* at 1965 (citations omitted).

> 2.  *Rule 9(b)*

Claims of fraud present an exception to the "notice" pleading protocol envisioned by Rule 8.  Five of the Plaintiffs' six counts sound in fraud.  Consequently, the Plaintiffs must meet Rule

---

[2] United States District Judge Susan C. Bucklew referred these motions to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). *See* docs. 40, 44.

9(b)'s heightened pleading standard: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, Plaintiffs must allege facts as to the time, place, and substance of the Defendants' alleged fraud, the details of the Defendants' allegedly fraudulent acts, when they occurred and who engaged in them. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). For their civil RICO claim, the Eleventh Circuit's pleading requirements per Rule 9(b) are more specific: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. *Ambrosia Coal & Construction Co. v. Pages Morales,* 482 F.3d 1309, 1316-17 (11th Cir. 2007) (affirming dismissal of complaint for failure to meet Rule 9(b) requirements). Additionally, Plaintiffs must link their specific allegations to the causes of action pled in their complaint. *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1278-79 (11th Cir. 2006). Finally, Rule 9(b) requires the Plaintiffs to inform each Defendant about the nature of his alleged participation in the fraud. *Id.*

  *B. Discussion*

   *1. Count I- Civil RICO*

  Pursuant to 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Furthermore, in civil cases, RICO plaintiffs must also satisfy the mandates of 18 U.S.C. § 1964(c). Under this provision, a person

injured in his business or property as a result of RICO activities has a right to recover threefold the

damages sustained.  Hence, civil RICO claimants must prove (1) requisite injury to "business or

property," and (2) that such injury was "by reason of" the substantive RICO violation.  18 U.S.C.

§ 1964(c).

*a. enterprise*

Looking at the first two elements of a § 1962(c), Plaintiffs must establish "conduct of an

enterprise" and the enterprise must have a common goal.  *Williams,* 465 F.3d at 1283-84 *quoting*

*United States v. Turkette*, 452 U.S. 576 (1981).  An "enterprise" is "any individual, partnership,

corporation, association, or other legal entity, and any union or group of individual associated in

fact."  18 U.S.C. § 1961(4).  The "definitive factor" of  a RICO enterprise is "the existence of an

association of individual entities, however loose or informal, that furnishes a vehicle for the

commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite

to the RICO violation."  *Williams, supra,* at 1284.  "The existence of an enterprise is proved by

evidence of an ongoing organization, formal or informal, and by evidence that the various associates

function as a continuing unit."  *Id* (citation omitted).  In this case, Plaintiffs allege that Defendant

Little (the only individual Defendant moving for dismissal) "served as [the enterprise's] registered

agent and attorney," collected unlawful debt on the enterprise's behalf, failed to disclose to Plaintiffs

that a federal court had enjoined Defendants Porcelli and Harris from engaging in commercial credit

transactions, and instituted and directed legal action against Plaintiffs Kathie and Donald Visceglie

to enforce the default options against them.  doc. 49, ¶¶87, 88, 93, 102.  Plaintiffs allege that

Defendant Southeast participated directly or indirectly in the RICO enterprise's affairs by collecting

unlawful debt and by accepting payments against Plaintiffs Kathie and Donald Visceglie's loan,

4

even though Southeast knew the loan was usurious when it received the assignment from Silverstone. *Id.* at ¶¶ 104, 105. Unlike the allegations in the Plaintiffs' previous complaints that were formulaic recitations of the RICO elements, I find Count I now notifies the Defendants of their alleged fraudulent acts in furtherance of the enterprise. *See Twombly*, 127 S.Ct. at 1964-65. This time, the Plaintiffs have set forth and incorporated into their RICO claim allegations concerning the Plaintiffs' individual loans (*Id.* at ¶¶ 41-70) and have apprised the Defendants about their specific activities directed at Plaintiffs.

The second element of an enterprise is that the enterprise has a common purpose. Here, Plaintiffs allege that Defendants had a common purpose of concealing their intent to obtain Plaintiffs' homes or at least the equity therein. Hence, I find the pleadings sufficient in this regard. *See Williams,* 465 F.3d at 1284 (recognizing the common purpose of gaining sufficient financial benefits from the scheme to defraud).

Finally, the Plaintiffs must allege that Defendants participated in the operation or management of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). Although Plaintiffs need not establish that a defendant is primarily responsible for the enterprise's affairs, the Plaintiffs must allege facts showing that each Defendant had "some part in directing the affairs of the enterprise." *Williams,* 465 F.3d at 1285. Section 1692(c) makes it unlawful for any person "... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "The word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Reves,* 507 U.S. at 179. In order to survive

a 12(b)(6) motion, a plaintiff must offer specific factual assertions as to how the defendants

participated in the operation or management of the RICO enterprise. *In re Managed Car Litigation*,

298 F.Supp. 2d 1259, 1276-77 (S.D. Fla. 2003).  And, as previously noted, this circuit has never

required anything other than a "loose or informal" association of distinct entities. *See Williams*, 465

F.3d at 1284.  As to Defendant Little, Plaintiffs assert that he instituted and directed legal action and

collected unlawful debt on the RICO enterprise's behalf, and as to Defendant Southeast, the Plaintiffs

assert that accepted payments against Plaintiffs Visceglie's loan.  Hence, I find that Plaintiffs have

now sufficiently alleged that Defendants engaged in the operation or management of the enterprise,

and that their RICO count states a claim upon which relief may be granted.  *See Twombly, supra*.


### b. *collection of unlawful debt*

While Defendants urge this Court that Plaintiffs' complaint should be dismissed because it

fails to establish a pattern of racketeering activity, Plaintiff s respond that the complaint shows

Little's  and SouthEast's participation in the RICO activity was based solely on their collection of

unlawful debt.   As the Plaintiffs assert, 18 U.S.C. § 1962(c) provides for liability either based on

either racketeering activity or collection of unlawful debt.  The statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged
> in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or
> collection of unlawful debt.

*See also United States v. Pepe*, 747 F.2d 632, 673 (11th Cir. 1984) (noting that RICO statute allows

for prosecution for a pattern of racketeering activity or collection of unlawful debt and rarity of

prosecutions for collections of unlawful debt).  The Eleventh Circuit requires only a single instance

of collection of unlawful debt– not a series or a pattern– to establish a claim under §1962(c) for

collection of unlawful debt. *Pepe, supra*, 747 F.2d at 661 (11th Cir. 1984) ("only one collection of unlawful debt" required to show a violation of §1962(c)). Hence, the second amended complaint sufficiently alerts Defendants Little and Southeast of their alleged wrongdoing(s).

### c. injury to business or property caused by RICO violation

To assert a civil RICO cause of action, Plaintiffs must also prove (1) requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c). Plaintiffs allege that "[b]ecause Plaintiffs were all drawn on by the false promises of Porcelli and Harris regarding the loans, they have been directly damaged by Porcelli and Harris' actions" and that "[b]y relaying on the promises made by SHF and its associates, each Plaintiff has suffered damage by paying money in excess of interest rates allowed by law, and in the case of the Vosceglies, by losing title to their home." (doc. 49, ¶¶ 91, 95). Plaintiffs further allege that "[a]s a result of these violations of 18 U.S.C. § 1962(c), each Plaintiff has suffered damage to property, mainly, loss of money, the equity in and title to each of their homes, and each Plaintiff is entitled to recover treble damages caused by the acts of these Defendants" (doc. 49, ¶ 107). I find these allegations establish proximate cause of injury to Plaintiffs' business or property caused by Defendants.

### 2. Count VI- civil conspiracy

Plaintiffs assert that "[f]rom approximately December 2004 through approximately June of 2007, Porcelli, Harris, Little, Kimoto, SHF, Silverstone Lending, Southeast Advertising, Keystone Financial, and MT25 LLC have conspired among themselves and with others to commit illegal acts enumerated in Counts I - IV of the Complaint and to use illegal methods to wrongfully obtain the Plaintiff's property" (doc. 49, ¶ 154). Plaintiffs allege Little "participated with Porcelli in the day-to-

day operations of the conspiracy in Florida, by assisting in the solicitation and execution of the illegal loans, and enforcing the illegal debts once the loans had been made (doc. 49, ¶ 156). Plaintiffs allege Southeast Advertising and MT25 LLC participated in the conspiracy by serving as a conduit to receive and distribute funds collected through the illegal loans; by accepting assignments of the illegal loans; and by assisting in the enforcement of the illegal loans.  They knew the loans violated the law because the usurious interest rates were apparent from the face of the documents they received. Notwithstanding their actual knowledge of the unlawful nature of the loans, they purchased the loans as described above and directed efforts against the Plaintiffs" (doc, 49, ¶159).  Unlike the conspiracy claim in the previous complaint, Plaintiffs now have included specific information about the illegal loans (see doc. 49, ¶¶ 41-70 (incorporated into conspiracy count in doc. 49, ¶ 133) and have alleged each conspirator's knowledge or reasons to know of the fraud.  Hence, assuming the allegations are true for purposes of the motions to dismiss, the Plaintiffs' right to relief is now raised above the speculative level.  *Twombly, supra,* at 1965.

   *D.  Conclusion*

   Accordingly, it is hereby

   RECOMMENDED:

   1. Defendants' Little and Southeast motions to dismiss (docs. 50-51) should be DENIED.

   IT IS SO REPORTED at Tampa, Florida, on August 15, 2008.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

8

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted, or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02, *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)(*en banc*).

Copies furnished to:
Hon. Susan C. Bucklew
Counsel of Record